**AFFIRM; and Opinion Filed May 12, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00188-CV

### EXXONMOBIL PIPELINE COMPANY,
### ROBERT W. CAUDLE, AND RICKY STOWE, Appellants
### V.
### TRAVIS G. COLEMAN, Appellee

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-12563**

## OPINION

Before Justices Lang-Miers, Brown, and Schenck[1]
Opinion by Justice Brown

At issue in this interlocutory appeal is whether the Texas Citizens Participation Act applies to appellee Travis G. Coleman's lawsuit against appellants — his former employer, ExxonMobil Pipeline Company, and supervisors, Robert W. Caudle and Ricky Stowe — arising out of internal, private communications about his job performance. The trial court concluded it did not and denied appellants' motion to dismiss the lawsuit under the Act. Appellants contend on appeal that the Act applies because the challenged statements were made both in the exercise of the right of free speech and in the exercise of the right of association. For reasons that follow, we conclude the Act does not apply and affirm the trial court's order denying the motion to dismiss.

---

[1] Justice David J. Schenck succeeded Justice Michael J. O'Neill, a member of the original panel, following Justice O'Neill's retirement. Justice Schenck has reviewed the briefs and the record before the Court.

## BACKGROUND

Beginning in August 2010, Exxon employed Coleman as a terminal technician at its facility in Irving, Texas, where petroleum products and additives are stored and mixed before being shipped out to gas stations. Coleman worked the night shift, and one of his duties, referred to as "gauging the tanks," was to record the volume of fluid in various storage tanks each night. Some tanks had a glass gauge on the side for determining volume. But technicians were required to gauge three particular tanks, including additive tank 7840, from the top with a tape and bob measuring device. Coleman was to handwrite the results and later record them in Exxon's computer system so they would appear on an inventory planning report the following day. Exxon fired Coleman in November 2012 following an investigation into his alleged failure to gauge tank 7840 on August 20, 2012.

After he was fired, Coleman sued Exxon and his two former supervisors for defamation. Coleman alleged appellants were liable for defamation because Caudle and Stowe, acting in the course and scope of their employment, made false statements to Exxon about him. Specifically, he alleged that Caudle, on an Exxon Near Loss form and on an Exxon inventory sheet, stated he did not gauge tank 7840. Coleman also asserted that Stowe verbally stated to Rick Van Buren, an Exxon investigator from the Houston office, that Stowe "could find no more documents in support of the statement that Coleman could not have gauged tank 7840" and had asked Coleman what had happened multiple times. Coleman maintained in his pleadings that he did gauge the tank, there were documents available to show he gauged the tank, and Stowe had asked him only one time about the incident. His pleadings alleged three other causes of action also arising out of the defamation, namely civil conspiracy, tortious interference with an existing business relationship, and business disparagement.

Appellants answered with a general denial and various affirmative defenses. Thereafter, they moved to dismiss Coleman's case under the Texas Citizens Participation Act, found in chapter 27 of the civil practice and remedies code. TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001-.011 (West 2015). Appellants contended they were entitled to a dismissal because Coleman's legal action was in response to their exercise of their right to free speech and their right of association. They further asserted the case should be dismissed under chapter 27 because Coleman could not present clear and specific evidence of each element of his claims to establish a prima facie case and also because appellants established by a preponderance of the evidence all the elements of their affirmative defenses. Appellants attached the affidavits of Caudle and Stowe to their motion, as well as documentary evidence, including inventory planning sheets and the Near Loss Form.

Caudle was Coleman's immediate supervisor. In his affidavit, he stated that during the day on August 20, 2012, he asked a technician to take some additive out of tank 7840 to make room for a new shipment. The next day, Caudle noticed the inventory numbers for that tank were the same as they had been the previous day. Caudle emailed Coleman to ask why he had failed to gauge the tank. Several days later, after getting no response, Caudle forwarded his email on to Stowe, the Terminal Superintendent, who was Caudle's supervisor. On August 22, 2012, Caudle prepared a Near Loss Report regarding the incident. In the report, Caudle stated, "On 8/20/12 Tech went out to gauge tanks and after gauging tank 7850 he made the assumption that tank 7840 was the same as night before not knowing the tech on the day shift had change[d] the pulling tank back to 7840 and did not gauge the tank." Caudle's affidavit stated that employees prepare Near Loss Reports any time an incident occurs or an environmental or safety risk is observed. The reports are generally used as learning tools at monthly safety meetings. Caudle disputed also stating in an inventory sheet that Coleman failed to gauge the tank.

According to Caudle, Exxon required nightly assessment of the fluid levels in the tanks for three reasons: 1) to avoid overfilling, 2) to determine if any tanks have leaks, and 3) to keep an accurate inventory. He stated that failure to gauge a tank as required could result in serious safety and environmental risks, specifically overfilling a tank or having an unnoticed leak. These conditions could endanger those working at the terminal and result in potential environmental harm. Also, failure to keep a proper inventory of fluids could impact Exxon's economic interests. Caudle further stated in his affidavit that his communications regarding Coleman's failure to gauge the tank were kept internal to Exxon and were made in furtherance of Exxon's interests.

In his affidavit, Stowe stated that Coleman was investigated for violation of Exxon's ethics policy as a result of his failure to gauge the tank and his report of inaccurate information on the inventory planning sheet. On November 6, 2012, Stowe attended a meeting with Exxon investigator Van Buren and Coleman. According to Stowe, Coleman admitted at the meeting that he did not gauge the tank on August 20, 2012. Coleman also admitted he understood he had falsified company records in violation of the ethics policy and signed a handwritten statement to that effect. Exxon placed Coleman on leave and discharged him effective November 30, 2012. Like Caudle, Stowe stated the communications regarding Coleman's failure to gauge the tank were kept internal to Exxon and were made in furtherance of Exxon's interests.

Coleman filed a response opposing appellants' motion to dismiss. He asserted the Act did not apply because it is limited to matters involving the public at large. In an affidavit attached to the motion, Coleman stated he had gauged tank 7840 on August 20th.[2] Coleman also

---

[2] Coleman's affidavit seems to indicate he did not gauge tank 7840 on August 21, 2012, but did gauge it during his shift that began on August 21st and ended the morning of August 22nd. Coleman stated that because tank 7850 was reading the same as the previous night, he held off on gauging tank 7840 until the morning so he could talk to the technician who works the day shift.

disputed that there were safety reasons for gauging the tanks. He claimed the only reason Exxon required technicians to gauge the tanks was to keep an accurate inventory.

After a hearing at which the trial court heard the arguments of counsel, the court denied appellants' motion to dismiss. In making its ruling, the court indicated it did not believe chapter 27 applied in this instance. This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(12) (West 2015).

On appeal, appellants initially contend the Act applies to the allegedly defamatory statements involved. Appellants next contend that since the Act applies, the trial court was required to dismiss Coleman's lawsuit because 1) Coleman failed to meet his burden of establishing a prima facie case on each element of his claims, and, alternatively, 2) appellants established the elements of one or more of their affirmative defenses. Finally, appellants ask us to remand the case to the trial court for a determination of the fees and costs due to them upon dismissal of Coleman's suit.

## TEXAS CITIZENS PARTICIPATION ACT

We begin with an examination of the Act in question. The stated purpose of the Act is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury. *Id.* § 27.002; *see In re Lipsky*, No. 13-0928, 2015 WL 1870073, at *6 (Tex. Apr. 24, 2015) (purpose is to summarily dispose of lawsuits designed only to chill First Amendment rights). To promote these purposes, chapter 27 provides a means for the expedited dismissal of unmeritorious suits that are based on, related to, or in response to a party's exercise of its right of free speech, right to petition, or right of association. TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a); *Pickens v. Cordia*, 433 S.W.3d 179, 183 (Tex. App.—Dallas 2014, no pet.). Statutes

like chapter 27 are commonly referred to using the acronym "anti-SLAPP" because they are intended to curb "strategic lawsuits against public participation." *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 868–69 (Tex. App.—Dallas 2014, no pet.).

A motion to dismiss under chapter 27 must be filed within sixty days of the date of service. TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(b). To prevail on a motion to dismiss, the movant bears the initial burden to show by a preponderance of the evidence that the action is based on, relates to, or is in response to the party's exercise of the right of free speech, the right to petition, or the right of association. *Id.* § 27.005(b). If the movant satisfies this burden, the trial court must dismiss the lawsuit unless the plaintiff establishes by clear and specific evidence a prima facie case for each essential element of the claim in question. *Id.* § 27.005(c). Even if the plaintiff meets this burden, the court must still dismiss the lawsuit if the movant establishes by a preponderance of the evidence each essential element of a valid defense. *Id.* § 27.005(d). In determining whether to grant or deny a motion to dismiss, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based. *Id.* § 27.006(a).

At issue in this appeal is whether appellants met their initial burden to show the Act applies. Appellants contend the Act applies for two reasons: the challenged statements were made in the exercise of the right of free speech and in the exercise of the right of association. This Court has held that we review this issue de novo. *Backes v. Misko*, No. 05-14-00566-CV, 2015 WL 1138258, at *6 (Tex. App.—Dallas Mar. 13, 2015, no pet. h.); *Pickens*, 433 S.W.3d at 183–84; *Better Bus. Bureau of Metro. Dallas, Inc. v. BH DFW, Inc.*, 402 S.W.3d 299, 304 (Tex. App.—Dallas 2013, pet. denied) (noting that we review issues of statutory construction de novo).

## I. The Right to Free Speech

We first consider appellants' argument that the Act applies because the allegedly defamatory communications were made in exercise of the right of free speech. The Act defines "Exercise of the right of free speech" as "a communication made in connection with a matter of public concern."[3] TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). The Act provides that a "Matter of public concern" includes an issue related to: 1) health or safety; 2) environmental, economic, or community well-being; 3) the government; 4) a public official or public figure; or 5) a good, product, or service in the marketplace. *Id.* § 27.001(7).

In the trial court, Coleman argued the Act does not apply because the communications were not public. The Texas Supreme Court recently rejected this argument, stating the plain language of the statute imposes no requirement that the form of the communication be public. *Lippincott v. Whisenhunt*, No. 13-0926, 2015 WL 1967025, at *2 (Tex. Apr. 24, 2015) (per curiam). Under the definition in the Act, the right of free speech has two components: 1) the exercise must be made in a communication, and 2) the communication must be made in connection with a matter of public concern. *Id.* Had the legislature intended to limit the Act to publicly communicated speech, the supreme court reasoned, it could easily have added language to that effect. *Id.*; *see Bilbrey v. Williams*, No. 02-13-00332-CV, 2015 WL 1120921, at *10 (Tex. App.—Fort Worth Mar. 12, 2015, no pet. h.) (mem. op.). There is no dispute about whether a communication was made in this case. We turn to whether the communication was in connection with a matter of public concern.

Appellants maintain the statements are a matter of public concern because they clearly related to health, safety, environmental well-being, and economic interests. They assert that

---

[3] "Communication" includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(1).

failure to gauge a tank could result in health, safety, and environmental risks because it could lead to a tank being overfilled or having an undetected leak, resulting in hazardous fluid spilling onto the ground, endangering employees and causing possible environmental harm. Appellants also assert spills and undetected leaks could impact Exxon's economic interests as Exxon would not have an accurate inventory of products coming and going from its facility.

We do not agree that the communications at issue are a matter of public concern. The communications related to Coleman's job performance, specifically his failure to fulfill a mandatory requirement of his job and his delay in responding to inquiries about the incident. Coleman alleged he was defamed when: 1) Caudle stated Coleman did not gauge tank 7840, both in the Near Loss Form and in an inventory sheet; and 2) Stowe stated to Exxon's investigator that a) he could "find no more documents in support of the statement that Coleman could not have gauged tank 7840," and b) he asked Coleman what had happened multiple times. These statements make no mention of health, safety, the environment, or Exxon's economic interests. They only involve Coleman's failure to gauge a tank and failure to timely respond when asked about it. The communications at issue involve nothing more than an internal, personnel matter at Exxon and were not a matter of public concern. The fact that the potential consequences of Coleman's failure to gauge the tank included health, safety, environmental, and economic concerns is not enough to transform communications about a private employment matter into a public concern. *Cf. In re Lipsky*, 411 S.W.3d 530, 542–43 (Tex. App.—Fort Worth 2013, orig. proceeding), *mand. denied*, No. 13-0928, 2015 WL 1870073 (Tex. Apr. 24, 2015) (communications about alleged contamination of residential water well due to fracking were matter of public concern because they involved environmental effects of fracking and safety of oil and gas company's drilling operations). The communications here had only a tangential relationship to health, safety, environmental, and economic concerns. We conclude appellants

did not establish by a preponderance of the evidence that Coleman's lawsuit was based on appellants' exercise of their right of free speech.

## II. The Right of Association

We turn to appellants' alternative argument that the Act applies to Coleman's case because the communications at issue were made in the exercise of the right of association. The Act defines "Exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." *Id.* § 27.001(2). Appellants contend the communications meet this statutory definition because they were made between Exxon employees regarding issues in which they shared a common interest, specifically Coleman's job performance, compliance with Exxon safety policies, and Exxon's investigation into Coleman's failure to gauge the tank and falsification of documents. Although these communications seem to fall within the plain language of the Act's definition of the exercise of the right of association, we decline to read the statute this broadly, concluding it would lead to absurd results.[4]

In interpreting a statute, our primary objective is to give effect to the legislature's intent in enacting the statute. *Crawford, Servs., Inc. v. Skillman Int'l Firm, L.L.C.*, 444 S.W.3d 265, 267 (Tex. App.—Dallas 2014, pet. dism'd) (citing *City of Houston v. Bates*, 406 S.W.3d 539, 544 (Tex. 2013)). We start with the text of the statute and presume the legislature intended what it enacted. *Id.* Legislative intent is best expressed by the plain meaning of the text unless the plain meaning leads to absurd results or a different meaning is supplied by legislative definition or is apparent from the context. *Id.; Jardin v. Marklund*, 431 S.W.3d 765, 770 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

---

[4] We question whether Coleman's lawsuit is truly based on, related to, or in response to appellants' right of association. Coleman's defamation-related claims challenge appellants' communications, not their right to associate freely. However, as defined in the Act, exercise of the right of association is a *communication* between individuals who join together based on a common interest.

Here, if we were to look only to the text of section 27.001(2), defining the right of association as a communication between individuals who join together to collectively express, promote, pursue, or defend common interests, it would result in giving constitutional right of association protection to virtually any private communication between two people about a shared interest. That is an absurd result that does not promote the purpose of the Act. Chapter 27 is intended to curb strategic lawsuits against public participation. *See Am. Heritage Capital*, 436 S.W.3d at 868–69. It would be illogical for the Act to apply to situations in which there is no element of public participation. *See Serafine v. Blunt*, No. 03-12-00726-CV, 2015 WL 2061922, at *18 (Tex. App.—Austin May 1, 2015, no pet. h.) (Pemberton, J., concurring) (noting that communications between husband and wife would seem to fall under Act's definition of exercise of right of association).

The Act itself instructs us to construe it liberally to fully effectuate its purpose and intent. TEX. CIV. PRAC. & REM. CODE ANN. § 27.011(b). Further, our analysis of a statute may be informed by the object sought to be obtained, the consequences of a particular construction, the legislative history, and the title of the provision. TEX. GOV'T CODE ANN. § 311.023 (West 2013). Again, the stated purpose of the Act is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury. TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. Considering the title of the Act (the Citizens Participation Act)[5], the object sought to be obtained, and the consequences of reading the definition of "exercise of the right to association" in

---

[5] *See* Citizens Participation Act, 82nd Leg., R.S., ch. 341, § 1, 2011 Tex. Gen. Laws 960 ("This Act may be cited as the Citizens Participation Act.").

isolation, we think the better approach is to read a public-participation requirement into the definition.

In a case also involving a private employment dispute, the Houston First Court of Appeals reached a similar conclusion, albeit in dicta. *See Cheniere Energy, Inc. v. Lotfi*, 449 S.W.3d 210, 216–17 (Tex. App.—Houston [1st Dist.] 2014, no pet.). In that case, the plaintiff sued her former employer for wrongful termination and sued two former coworkers for tortious interference. 449 S.W.3d at 211–12. The coworkers moved to dismiss the claim against them under the Act, asserting the plaintiff's lawsuit was brought in response to their exercise of the right of association. *Id.* at 212. The plaintiff filed a response, but neither side filed any affidavit evidence. With only the pleadings to go on, the trial court denied the motion to dismiss. *Id.* The court of appeals upheld the trial court's ruling, concluding the coworkers failed to meet their burden to show they were entitled to dismissal because the limited allegations in the plaintiff's pleadings did not show the coworkers had a communication, acted in furtherance of a common interest, or that the claim against them is related to their exercise of the right of association. *Id.* at 214–15.

Referring to the title of the Act, the court noted that the terms "citizen" and "participation" contemplate a larger public purpose. *Id.* at 216. It further stated the plaintiff's lawsuit did not implicate the legislature's express declaration of the purpose behind the Act, which indicates that a nexus is required between the communication and the generally recognized parameters of First Amendment protection. *Id.* "Otherwise, any communication that is part of the decision-making process in an employment dispute — to name just one example — could be used to draw within the [Act's] summary dismissal procedures private suits implicating only private issues." *Cheniere Energy*, 449 S.W.3d at 216–17.

Two members of the three-judge panel concurred, writing separately to emphasize that the Act did not apply to the plaintiff's tortious interference claim against her coworkers. *Id.* at 217 (Jennings, J., concurring). The concurrence stated that, standing alone, the Act's definition of the "exercise of the right of association" in section 27.001(2) appears to include communications that are not constitutionally protected and do not concern citizen or public participation. *Id.* at 219. The concurrence stated that reading section 27.001(2) in isolation would lead to absurd results and would "actually thwart any meritorious lawsuit for demonstrable injury in which a plaintiff alleges that two or more persons engaged in a civil wrong involving a communication." *Id.* At a minimum, such a reading would add unnecessary delay and expense to a plaintiff's lawsuit. *Id.*

Although we are aware that in *Lippincott*, the supreme court cautioned against "judicially amending" the Act by adding words that are not there, we agree that the legislature could not have intended for section 27.001(2) to be read in isolation. *See Lippincott*, 2015 WL 1967025, at *1 (discussing definition of exercise of right of free speech). We conclude that, to constitute an exercise of the right of association under the Act, the nature of the "communication between individuals who join together" must involve public or citizen's participation.[6] *See, e.g., Neyland v. Thompson*, No. 03-13-00643-CV, 2015 WL 1612155, at *4 (Tex. App.—Austin Apr. 7, 2015, no pet. h.) (mem. op.) (allegedly defamatory statements made between members of homeowners' association about performance of HOA's property manager were communications made in exercise of right of association); *Backes*, 2015 WL 1138258, at *9–10 (right of association was invoked where plaintiff's civil conspiracy lawsuit was based on posts two friends made on public social media forum for horse enthusiasts). The communications in this case, made between a few Exxon higher ups who joined together in the course and scope of their employment to

---

[6] To be clear, public participation does not equal public speech.

internally discuss Coleman's alleged failure to meet the requirements of his job, do not have any element of citizen participation. We therefore conclude appellants have not shown they were exercising their right of association.

Appellants cite *Combined Law Enforcement Associations of Texas v. Sheffield*, No. 03-13-00105-CV, 2014 WL 411672 (Tex. App.—Austin Jan. 31, 2014, pet. filed) (mem. op.), for the proposition that the Act's right of association protection extends to private communications in an employment context. We note that *Sheffield* does not expressly hold that private communications by an employer about an employee invoke the right of association. And we do not consider it to be analogous to Coleman's case.

In *Sheffield*, the employer was a labor union that represented law enforcement officers. *Id.*, at *1. Sheffield worked for the union, but was fired, and sued the union for defamation. *Id.* The allegedly defamatory statements arose from Sheffield's conduct regarding his union-issued computer after he was terminated. *Id.* Sheffield complained of five communications he alleged were collectively made to more than seventy police officers and former coworkers: 1) an email sent by the union's executive director to the union board and staff; 2) a comment made by the executive director to the president of the Corpus Christi Police Officers Association; 3) statements union officials made to the Laredo Police Association President; 4) statements a union lawyer made to an unspecified recipient; and 5) statements the lawyer made to a local District Attorney. *Id.*, at *3. The court of appeals concluded the first three communications were made between members of the union and thus were between individuals who joined together in the union to collectively express, promote, or defend the common interests of police officers. *Id.*, at *5. There was no evidence the remaining two communications were made to members of the union and therefore the Act did not apply to those communications. *Id.* From our reading of the opinion, it seems the court invoked the right of association not because the

–13–

communications were between people who had the police union as their employer, but because they were between people who were *members* of the union, an association organized for the purpose of representing law enforcement officers.  We are not persuaded that *Sheffield* suggests we should reach a different outcome in this case.

Appellants also make the argument that the Act applies because the definition of the "exercise of the right of association" is almost identical to the "common-interest privilege." There is a qualified privilege against defamation liability for communications made in good faith between people with an interest sufficiently affected by the communication, and the privilege applies to employers and employees who share a common interest in employment-related matters.  *See Burbage v. Burbage*, 447 S.W.3d 249, 254 (Tex. 2014); *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995).  This privilege is an affirmative defense.  *See Burbage*, 447 S.W.3d at 254.  We fail to see how the fact that the nature of the communications might give appellants an affirmative defense to liability is relevant to our determination of whether the Act applies in the first instance.

In summary, we have concluded appellants did not meet their burden to prove their communications were made in the exercise of the right of free speech because the communications did not involve a matter of public concern.  We have further concluded appellants did not meet their burden to show that their private, internal communications about Coleman's job performance were made in exercise of the right of association.  We overrule appellants' first issue.  Because appellants did not meet their burden to show the Act applies to Coleman's lawsuit, we need not address their remaining issues.

We affirm the trial court's order denying the motion to dismiss.

/Ada Brown/
ADA BROWN
JUSTICE

140188F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EXXONMOBIL PIPELINE COMPANY, ROBERT W. CAUDLE, AND RICKY STOWE, Appellants

No. 05-14-00188-CV       V.

TRAVIS G. COLEMAN, Appellee

On Appeal from the 298th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-13-12563.
Opinion delivered by Justice Brown.  Justice Lang-Miers and Schenck participating.

In accordance with this Court's opinion of this date, the trial court's January 29, 2014 order denying the motion to dismiss is **AFFIRMED**.

It is **ORDERED** that appellee TRAVIS G. COLEMAN recover his costs of this appeal from appellants EXXONMOBIL PIPELINE COMPANY, ROBERT W. CAUDLE, AND RICKY STOWE.

Judgment entered this 12th day of May, 2015.