**Opinion issued April 30, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00599-CV

———————————

**JOSCELYN GARDNER F/K/A JOSCELYN GARRETT, TONY GARDNER AND GENERATION UNLIMITED, LLC D/B/A RE/MAX GENERATION,** Appellants

**V.**

**DAVID TUSKEY AND DAWN BOUCK BENOIT,** Appellees

---

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-07557**

---

## MEMORANDUM OPINION

This is an accelerated interlocutory appeal from the trial court's denial of a motion to dismiss under the Texas Citizens Participation Act. TEX. CIV. PRAC. &

REM. CODE §§ 27.008(b), 51.014(a)(12). The underlying dispute arises from the sale of real property.

Tony and Joscelyn Gardner sold their home to David Tuskey and his fiancé, Dawn Bouck Benoit. After the closing, the Tuskeys moved into the home and discovered numerous undisclosed defects. The Tuskeys sued the Gardners and their realtor, Generation Unlimited, LLC d/b/a Re/Max Generation ("Re/Max") (collectively referred to as "the Gardners" unless otherwise indicated), for fraud and conspiracy, alleging that they had falsely represented that the home was in "perfect" condition with no known defects in order to fraudulently induce the Tuskeys to purchase the home. The Gardners filed a motion to dismiss under the TCPA, arguing that the Tuskeys' legal action is based on, relates to, or is in response to the Gardners' exercise of their right of free speech and right of association.[1] *Id.* § 27.003(a). The trial court denied the motion.

We hold that the Gardners failed to meet their initial burden to show by a preponderance of the evidence that the Tuskeys' legal action is based on, relates to,

---

[1]  In 2011, the Legislature enacted the TCPA to allow for the early dismissal of groundless legal actions that threaten the free exercise of certain statutorily defined rights. *See* Senate Cmte. on State Affairs, Bill Analysis, Tex. H.B. 2973, 82nd Leg., R.S. (2011); *see also Greer v. Abraham*, 489 S.W.3d 440, 442 (Tex. 2016). In 2019, the Legislature amended the TCPA. Act of May 17, 2019, 86th Leg., R.S., ch. 378, 2019 Tex. Gen. Laws 684. However, the prior version continues to control cases filed before September 1, 2019. *Id.* §§ 11–12, 2019 Tex. Gen. Laws at 687. This is one such case. Thus, all references to the TCPA are to the prior version.

or is in response to the Gardners' exercise of the right of free speech or right of association, *id.* § 27.005(b)(1), (3), as the allegedly false representations forming the basis of the Tuskeys' claims were not made in furtherance of any community or public interests and are not otherwise relevant to the public at large, *id.* § 27.001(2), (3), (7). Accordingly, we affirm.

## Background

### *The Tuskeys buy the Gardners' home based on the Gardners' representations that the home had no known defects*

This dispute arises from the sale of residential real property in Houston, Texas ("the Property"). The Gardners purchased the Property in 2013 and decided to sell it in 2018.

In July 2018, the Gardners retained Josiah Smith of Re/Max as their realtor. Smith advertised the Property online on the Multiple Listing Service ("the Listing"). The Listing stated, in relevant part:

> This home is perfect! The pool is amazing and perfect for summer FUN! Open living room perfectly showcases the gourmet kitchen. HUGE downstairs Master bed and bath with a walkthrough to a study/nursery! 2 staircase entries take you to your game room with full wet bar and easy access to your home theater. YES....this fully installed home theater will be included with the purchase of the house! AMAZING! Big bedrooms are much bigger than the norm and one of the bedrooms upstairs has a full bath! Come and take a look at your new home! THIS HOME DID NOT FLOOD DURING HARVEY!

The Tuskeys saw the Listing, which prompted them to contact the Gardners and ultimately to make an offer on the house. The Gardners accepted the offer, and the parties entered into a contract for the sale of the Property.

The Gardners then completed a Seller's Disclosure Notice, which they provided to the Tuskeys. In the Notice, the Gardners made numerous representations about the condition of the Property. As relevant here, the Gardners represented that there were no known defects in the roof, the ceilings, the interior or exterior walls, the electrical systems, the floors, the doors, the plumbing, or any structural component of the house. The Gardners further represented that they were unaware of active termites, termite or wood rot damage needing repair, previous termite or wood rot damage, previous termite treatment, water penetration, previous structural or roof repairs, improper drainage, or any other item in need of repair.

The next week, the Tuskeys had the Property inspected by Terry Acra. After the inspection, Acra prepared a report of his findings. In the report, Acra opined that the foundations were "deficient" due to cracking and recommended that cracks "extend[ing] into the ground" be "properly patched and sealed to prevent wood destroying insects from entering the house unnoticed." Acra further opined that the grading and drainage were "deficient" due to "high soil levels." He explained that the high soil levels were "conducive for wood destroying insects" and had

4

"prevent[ed] a visual inspection of the foundation in these areas." Acra did not, however, find any current termite infestation or damage caused by termites. Nor did he find any evidence of flooding or leaking from the ceiling or roof.

As a result of the inspection, the Gardners completed additional repairs, none of which are relevant here. On August 31, 2018, the parties closed on the sale of the Property. At the closing, the Gardners conveyed the Property to the Tuskeys.

***The Tuskeys move into the home, discover numerous defects, and sue the Gardners for fraud and conspiracy***

After closing, the Tuskeys moved onto the Property and discovered numerous defects and conditions that were not disclosed in the Notice and not discovered by Acra during his inspection. Specifically, the Tuskeys discovered a defective roof and related damage from leaking, defective drainage, defective plumbing and related damage from leakage through walls, an active termite infestation and related damage, defective pool equipment, and a defective electrical system.

The Tuskeys sued the Gardners and Re/Max for (1) common law fraud; (2) statutory fraud, *see* TEX. BUS. & COM. CODE § 27.01; and (3) conspiracy. In their petition, the Tuskeys alleged that the Gardners and Re/Max falsely represented the condition of the Property in the Listing and in the Notice as part of a conspiracy to fraudulently induce them into purchasing the Property.

5

*The Gardners move to dismiss the Tuskeys' claims under the TCPA*

The Gardners moved to dismiss the Tuskeys' claims under TCPA. In their motion, the Gardners asserted that the Tuskeys' claims were based on, related to, or in response to the Gardners' exercise of the right of free speech and right of association and that the Tuskeys could not establish by clear and specific evidence a prima facie case for each essential element of their claims. The Gardners further asserted that, even if the Tuskeys could establish a prima facie case for their claims, the Gardners were still entitled to dismissal because they had established valid defenses to the claims. The Gardners supported their motion with affidavits from Joscelyn Gardner, Tony Gardner, and Smith.

The parties conducted limited discovery, and the Tuskeys then filed their response, in which they argued that the allegedly fraudulent representations forming the basis of their claims did not constitute the exercise of the right of free speech because they were not made in connection with a matter of public concern. The Tuskeys further argued that their claims against Re/Max were exempt from protection under the TCPA's commercial-speech exemption. Finally, the Tuskeys argued that, even if their claims were predicated on the Gardners' exercise of a protected right, the Gardners still were not entitled to dismissal because the Tuskeys had established by clear and specific evidence a prima facie case for their claims, and the Gardners had failed to establish a valid defense. The Tuskeys

6

supported their response with declarations from David Tuskey and Dawn Bouck; an affidavit from their expert, adjuster Don Staples; a report summarizing Staples' findings from an inspection of the Property; and excerpts from the depositions of the Gardners and Smith.

The Gardners filed a reply brief with additional evidence, including affidavits from the Gardners and Smith, excerpts from the depositions of the Tuskeys, and Acra's inspection report.

### *The trial court denies the Gardners' motion*

The trial court held a hearing on the Gardners' motion. At the end of the hearing, the trial court denied the motion in its entirety. The Gardners appeal.

## Motion to Dismiss

On appeal, the Gardners contend that the trial court erred in denying their motion to dismiss. Specifically, the Gardners argue that the trial court erred because: (1) they met their initial burden to show that the Tuskeys' claims are based on, related to, or in response to their exercise of the right of free speech and right of association, (2) the Tuskeys failed to establish that their claims are exempt from the TCPA, (3) the Tuskeys failed to establish a prima facie case for their claims, and (4) even if the Tuskeys did establish a prima facie case for their claims, the Gardners established valid defenses to those claims.

## A.     Applicable law

The TCPA provides a mechanism for early dismissal of suits based on a party's exercise of certain statutorily defined rights, namely, the right of free speech, the right to petition, and the right of association. TEX. CIV. PRAC. & REM. CODE §§ 27.001(2)–(4), 27.003. Under the TCPA, if a legal action is "based on, relates to, or is in response" to a defendant's exercise of these rights, the defendant may file a motion to dismiss the legal action. *Id.* § 27.003(a).

Once a motion to dismiss is filed, a burden-shifting mechanism goes into effect. *In re Lipsky*, 460 S.W.3d 579, 586–87 (Tex. 2015) (orig. proceeding). Under the Act, the defendant has the initial burden to show by a "preponderance of the evidence" that the plaintiff's legal action is "based on, relates to, or is in response to" the defendant's exercise of (1) the right of free speech, (2) the right to petition, or (3) the right of association. TEX. CIV. PRAC. & REM. CODE § 27.005(b). If the defendant meets its initial burden, the burden shifts to the plaintiff to either (1) establish that the legal action is exempt from the Act, *see id.* § 27.010 (listing exempted legal actions), or (2) establish by "clear and specific evidence a prima facie case for each essential element of the claim in question[,]" *id.* § 27.005(c). However, if the plaintiff establishes the essential elements of its claim, the defendant can still prevail by establishing by "a preponderance of the evidence

each essential element of a valid defense to the [plaintiff]'s claim." *Id.* at § 27.005(d).

When determining whether to dismiss the legal action, the trial court must consider "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a). The trial court may allow specified and limited discovery relevant to the motion on a showing of good cause, but otherwise all discovery in the legal action is suspended until the court has ruled on the motion to dismiss. *Id.* §§ 27.003, .006(b).

## B.     Analysis

We begin by considering whether the Gardners met their initial burden to show by a preponderance of the evidence that the Tuskeys' legal action is based on, relates to, or is in response to the Gardners' exercise of the right of free speech or the right of association. *See id.* § 27.005(b)(1), (3). Whether the Gardners met their initial burden is a question of law, which we review de novo. *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019).

**1.     The Gardners failed to show the Tuskeys' claims are based on, related to, or in response to the Gardners' exercise of the right of free speech.**

Under the TCPA, the "exercise of the right of free speech" is defined as "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(3). A "matter of public concern" is in turn defined to

9

include "an issue related to: (A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." *Id.* § 27.001(7).

To be protected, the TCPA does not require that the communication "specifically mention" the matter of public concern. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900 (Tex. 2017) (per curiam). Nor does it require more than a "tangential relationship" to the same. *Id.* However, "not every communication related somehow to one of the broad categories set out in section 27.001(7) always regards a matter of public concern." *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 137 (Tex. 2019). The communication still must have "public relevance beyond the pecuniary interests of the private parties involved." *Id.* at 136. That is, the communication must refer "to matters 'of political, social, or other concern to the community,' as opposed to purely private matters." *Id.* at 135 (quoting *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017)). The communication must address a "a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Brady*, 515 S.W.3d at 884 (quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)).

The Gardners argue that the allegedly fraudulent representations forming the basis of the Tuskeys' claims were made in connection with a matter of public concern because they relate to: (1) health or safety, (2) environmental, economic,

10

or community well-being, and (3) a good, product, or service in the marketplace. We consider each argument in turn.

### (a) Health or safety

First, we consider whether the allegedly fraudulent representations forming the basis of the Tuskeys' claims relate to "health or safety." TEX. CIV. PRAC. & REM. CODE § 27.001(7)(A). The Tuskeys' claims are based on certain representations made in the Listing and the Notice. The Gardners contend that these representations relate to "health or safety."

Specifically, the Gardners argue that the Listing relates to "health or safety" because it represents that the Property did not flood during Hurricane Harvey. And the Gardners argue that the Notice relates to "health or safety" because it addresses: (1) whether the Property was equipped with certain devices and equipment, such as smoke detectors, a security system, emergency escape ladders, and a carbon monoxide alarm; (2) whether the Property suffered certain defects, such as defects in the appliances, plumbing, walls, roof, ceiling, foundation, and electrical system; and (3) whether the Property suffered from certain conditions and occurrences, such as active termites, previous flooding, improper drainage, water penetration, hazardous or toxic waste, asbestos components, radon gas, lead based paint, and previous fires.

We acknowledge that certain representations made in the Notice—such as those concerning the presence of hazardous or toxic waste, asbestos, and radon gas—relate to "health or safety" as those terms are construed within the context of the TCPA. But the representations relating to "health or safety" aren't the representations forming the basis of the Tuskeys' claims. The Tuskeys do not, for example, allege that the Notice falsely represented that the Property was free from all hazardous or toxic waste.

Instead, the Tuskeys allege that the Notice falsely represented that (1) there were no known defects to the ceiling and roof, when in fact the patio ceiling leaked during heavy rain; (2) there was no known improper drainage, when in fact water and mud would drain into the pool and back-splash onto the patio during heavy rain; (3) there were no known defects to the plumbing or water penetration, when in fact there were several water stains (concealed by fresh paint) indicating water damage and previous leaks; and (4) there were no known termites or termite damage, when in fact there was a current termite infestation and damage throughout the Property.

These allegedly false representations do not address any publicly relevant health or safety concern. *Cf. Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509–10 (Tex. 2015) (per curiam) (holding that emails alleging that nurse anesthetist failed to provide adequate coverage for pediatric cases, administered different narcotic

than was ordered, falsified records, and violated facility's sterile protocol policy related to "health or safety" and were thus protected under TCPA); *Baumgart v. Archer*, 581 S.W.3d 819, 825–26 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (holding that news report in television broadcast and web article allegedly implying former peace officer's guilt of murder of deputy constable related to "health or safety" and were thus protected under TCPA). Whether a private residence suffers from termites, a leaky roof, or drainage into its pool are not "subject[s] of general interest and of value and concern to the public." *Brady*, 515 S.W.3d at 884. They are not matters of "concern to the community." *Creative Oil & Gas*, 591 S.W.3d at 135. Instead, they are "purely private matters[,]" *id.*, relevant in this case only to the parties involved in the sale of the Property.

We hold that the allegedly fraudulent representations forming the basis of the Tuskeys' claims do not relate to "health or safety."

### (b) Environmental, economic, or community well-being

Next, we consider whether the allegedly fraudulent representations forming the basis of the Tuskeys' claims relate to "environmental, economic, or community well-being." TEX. CIV. PRAC. & REM. CODE § 27.001(7)(B). The Gardners contend that the allegedly false representations in the Listing and Notice relate to "environmental, economic, or community well-being" for the same reasons they

13

contend these representations relate to "health or safety." And for the same reasons we rejected the latter contention, we reject the former one too.

The Tuskeys do not allege that the representations in the Listing and Notice impacted, adversely or otherwise, the community at large. They only allege that the representations impacted their personal well-being. And if a communication solely concerns a party's personal well-being, the communication is not related to "environmental, economic, or community well-being," as these terms connote issues with a broader impact. *See, e.g.*, *Schmidt v. Crawford*, 584 S.W.3d 640, 650 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (holding that allegedly fraudulent statements in real property records were not related to "economic well-being" when statements "affected [defendants'] own financial well-being" but not well-being of broader economy); *Caliber Oil & Gas, LLC v. Midland Visions 2000*, 591 S.W.3d 226, 239–40 (Tex. App.—Eastland 2019, no pet. h.) (holding that "communications . . . made in connection with the purchase and sale of interests in [real] property" did not relate to "economic well-being" when they "related only to the parties' personal financial well-being").

We hold that the allegedly fraudulent representations forming the basis of the Tuskeys' claims do not relate to "environmental, economic, or community well-being."

### (c) A good, product, or service in the marketplace

Finally, we consider whether the allegedly fraudulent representations forming the basis of the Tuskeys' claims relate to "a good, product, or service in the marketplace." TEX. CIV. PRAC. & REM. CODE § 27.001(7)(E). The Gardners contend that the allegedly fraudulent representations in the Listing and Notice relate to "service[s] in the marketplace," i.e., the realtor and brokerage services of Re/Max. We disagree.

Although the representations were made by someone providing realtor and brokerage services (Smith), the representations do not concern or relate to those services; instead, they concern and relate to the condition of the Property.[2] The representations in the Notice, moreover, were only made after the parties had entered into the purchase contract, and they were only made to the Tuskeys. These representations, with a limited business audience concerning a private transaction, have no relevance to "a public audience of potential buyers or sellers." *Creative Oil & Gas*, 591 S.W.3d at 135.

We hold that the allegedly fraudulent representations forming the basis of the Tuskeys' claims do not relate to "a good, product, or service in the

---

[2]    We note that representations about the condition of the Property do not relate to "a good . . . in the marketplace," as the term "good" does not encompass real property. *Schmidt v. Crawford*, 584 S.W.3d 640, 649 (Tex. App.—Houston [1st Dist.] 2019, no pet.) ("We disagree that the plain, common meaning of 'good' is broad enough to embrace real property.").

marketplace." Accordingly, we hold that the Gardners have failed to show by a preponderance of the evidence that the Tuskeys' legal action is based on, relates to, or is in response to the Gardners' exercise of the right of free speech. We now turn to the right of association.

**2.    The Gardners failed to show the Tuskeys' claims are based on, related to, or in response to the Gardners' exercise of the right of association.**

Under the TCPA, the "exercise of the right of association" is defined as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." TEX. CIV. PRAC. & REM. CODE § 27.001(2). "Common interests," we recently explained, are interests "relating to [the] community at large." *Gaskamp v. WSP USA, Inc.*, No. 01-18-00079-CV, 2020 WL 826729, at *13 (Tex. App.—Houston [1st Dist.] Feb. 20, 2020, no pet. h.). Thus, to constitute an exercise of the right of association under the TCPA, the nature of the communication must involve "public or community interests." *Id.*; *see also ExxonMobil Pipeline Co. v. Coleman*, 464 S.W.3d 841, 848 (Tex. App.—Dallas 2015) ("We conclude that, to constitute an exercise of the right of association under the Act, the nature of the 'communication between individuals who join together' must involve public or citizen's participation."), *reversed on other grounds*, 512 S.W.3d 895 (Tex. 2017) (per curiam). Communications made

in pursuit of purely private interests are not protected. *See Gaskamp*, 2020 WL 826729, at *13; *Coleman*, 464 S.W.3d at 848.

As discussed, the Tuskeys' claims are based on the allegedly false representations made in the Listing and Notice. The Gardners contend that these representations constitute the exercise of the right of association, as they "were made in connection with [their] common business goal of selling the Property." We disagree.

The Gardners and Re/Max's shared interest in selling the Property cannot be fairly characterized as an interest of the community or public at large. Thus, the communications between the Gardners and Smith, made in pursuit of their common goal of selling the Property, do not constitute the exercise of the right of association. *See Gaskamp*, 2020 WL 826729, at *13 (holding that communications made in furtherance of "new business venture" did not constitute exercise of right of association); *Coleman*, 464 S.W.3d at 848 (holding that communications between company "higher ups" who "joined together in the course and scope of their employment to internally discuss [employee]'s alleged failure to meet the requirements of his job" did not constitute exercise of right of association).

We hold that the Gardners have failed to show by a preponderance of the evidence that the Tuskeys' legal action is based on, relates to, or is in response to the Gardners' exercise of the right of association.

**3. Because the Gardners failed to meet their initial burden, the trial court did not err in denying their motion.**

Having concluded that the Gardners failed to meet their initial burden, we need not determine whether the Tuskeys established either the application of an exemption or a prima facie case for their claims. We hold that the trial court did not err in denying the Gardners' motion to dismiss and accordingly overrule their sole issue.

## Conclusion

We affirm the trial court's order denying the Gardners' motion to dismiss.


Gordon Goodman
Justice

Panel consists of Chief Justice Radack and Justices Kelly and Goodman.