

# Fourth Court of Appeals
## San Antonio, Texas

### DISSENTING OPINION

No. 04-19-00484-CV

**SEGUNDO NAVARRO DRILLING, LTD.**, Lewis Petro Properties, Inc., Tercero Navarro, Inc., and Rodney R. Lewis,
Appellants

v.

**SAN ROMAN RANCH MINERAL PARTNERS, LTD.**,
Appellee

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2018CVK002483D4
Honorable Oscar J. Hale, Jr., Judge Presiding

### DISSENT TO OPINION ON MOTION FOR REHEARING

Opinion by: Beth Watkins, Justice
Dissenting Opinion by: Luz Elena D. Chapa, Justice

Sitting:     Sandee Bryan Marion, Chief Justice
             Luz Elena D. Chapa, Justice
             Beth Watkins, Justice

Delivered and Filed: August 19, 2020

As originally enacted, the Texas Citizens Participation Act (TCPA) defined the "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests."[1] The majority construes "common interests" as "public" interests, which are interests of the community at large. Because

---

[1] Act of May 18, 2011, 82d Leg., R.S., ch. 341, § 2, sec. 27.001(2), 2011 Tex. Gen. Laws 961 (current version at TEX. CIV. PRAC. & REM. CODE § 27.011(2)).

the Legislature intended "common" merely to require the interests to be "shared" by the individuals who joined together, I respectfully dissent.

**CONSTRUING "COMMON"**

The TCPA does not define "common." Used adjectivally, "common" can mean either "public" or "shared" by two or more people. *See Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 473 (Tex. App.—Houston [1st Dist.] 2020, pet. filed) (en banc). Construing "common" in the TCPA requires a statutory construction analysis. *See In re Panchakarla,* No. 19-0585, 2020 WL 2312204, at *3 (Tex. May 8, 2020) (orig. proceeding). The plain language, context, purpose, and legislative history support construing "common" interests as those "shared" by the individuals who join together, not "public" interests shared by the community at large.

**A. Context requires construing "common" as "shared."**

Grammatically, when "common" is used in a sentence to refer to the public or community at large, the term is preceded by "the" or without reference to a specific group. *See, e.g.*, U.S. CONST. art. I, § 8 ("the common Defence"); WEBSTER'S THIRD NEW INT'L DICTIONARY 458 (2002) ("a sense of common interest").[2] Here, however, the Legislature used "common" when referring to a more specific group: "individuals who join together." The sentence in which the Legislature used "common" supports construing the term as "shared" not "public."

Substantively, in the freedom of association context, "common interests" refers to shared interests that cause individuals to associate. The Legislature used "common interests" to define "right of association." TEX. CIV. PRAC. & REM. CODE § 27.001(2). The TCPA's purpose is to safeguard and encourage the constitutional right of free speech, the right of petition, and freedom of association. *Id.* § 27.002. Although the right of free speech and the right of petition appear in

---

[2] In the appealed order, the trial court gave the example of "work for *the* common good" (emphasis added).

the text of the First Amendment, freedom of "association" is a creature of and defined by Supreme Court precedent. In defining the constitutional right to freedom of association, the Supreme Court has used the term "common interests" to refer to interests shared by specific groups, such as a group of private businesses, rather than the public or community at large. *See, e.g., Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510–11 (1972).[3]

When enacting the TCPA in 2011, the Legislature purposefully used the word "public" to limit the "free speech" and "right of petition" definitions. However, the Legislature chose not to use "public" in defining "right of association." When the Legislature "uses certain language in one part of the statute and different language in another," we must assume the Legislature intended different meanings. *Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 564 (Tex. 2016). If the Legislature intended to limit the right of association to "public" interests, the Legislature would have used that term, as it did in defining the rights of free speech and to petition. Instead, the Legislature used "common" interests because the Legislature intended a meaning other than "public" interests. *See id.*

Moreover, the TCPA as a whole applies to some legal actions relating to private business interests. Specifically, the TCPA's commercial speech exemption exempts some legal actions relating to commercial transactions, but only if the defendant is "primarily engaged in the business of selling or leasing goods or services." TEX. CIV. PRAC. & REM. CODE § 27.010(a)(2). Because the TCPA exempts only some communications on purely private commercial transactions, then it necessarily follows that other communications on purely private commercial transactions may fall

---

[3] In discussing freedom of association, the Supreme Court has used the word "common" to mean shared by the individuals who associated together. *See, e.g.*, *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984) ("[W]hen the State interferes with individuals' selection of those with whom they wish to join in a common endeavor, freedom of association in both of its forms may be implicated."). The "shared goals" that cause individuals to join together for collective action is essential to the right to freely associate. *See id.* at 622.

within the TCPA's purview. And, the original definition of "matter of public concern" in the TCPA included issues related to goods and services "in the marketplace." Clearly, "text cannot be divorced from context." *Worsdale v. City of Killeen*, 578 S.W.3d 57, 69 (Tex. 2019). Grammatical, substantive, and statutory context require construing "common" interests as "shared" interests, not "public" interests.

## B. Legislative history confirms "common" means "shared."

The 2019 amendments to the TCPA confirm the Legislature intended—and still intends— "common" to mean "shared," not "public." In amending the "right of association" definition, the Legislature acknowledged the TCPA's terms were "overly broad or unclear." *Gaskamp*, 596 S.W.3d at 474. In 2019, the Legislature amended this definition as follows:

> "Exercise of the right of association" means to [a~~ communication between individuals who~~] join together to collectively express, promote, pursue, or defend common interests relating to a governmental proceeding or a matter of public concern.[4]

Notably, the Legislature kept the word "common" in the definition and did not substitute the word "public" for "common." This confirms "common" interests cannot mean "public" interests.

First, in the 2019 amendments, the Legislature retained the word "common" and limited the "common interests" covered by the definition to those "relating to . . . a matter of public concern." The 2019 amendments confirm that only some "common interests relat[e] to . . . a matter of public concern"; this necessarily means not all "common interests" relate to a matter of public concern. If some "common" interests are not "public" interests, then "common" interests cannot possibly mean "public" interests.

---

[4] Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 1, 2019 Tex. Sess. Law Serv. 684 (current version at TEX. CIV. PRAC. & REM. CODE § 27.011(2)).

Second, if courts are to give the word "common" any effect after the 2019 amendments, courts must conclude the Legislature now intends "common" to mean "shared" by the individuals who join together. Otherwise, after the 2019 amendments, courts continuing to construe "common" as meaning "public" would render the word "common" mere surplusage. Alternatively, courts construing "common" as meaning "public" in cases filed before September 1, 2019, when the amendments became effective, would give the same statutory term—"common interests"—different meanings based on when the case was filed, when the Legislature purposefully chose to use the same term for all cases filed before and after the 2019 amendments.

**C. Construing "common" as "shared" is consistent with the TCPA's purposes.**

Several of our sister courts have reasoned that "common" must mean "public"; otherwise, the definition of "right of association" would absurdly extend the TCPA's protections beyond the purpose of the statute. *Gaskamp*, 596 S.W.3d at 472. The TCPA's purpose "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002. Respectfully, some of our sister courts' reasoning does not withstand close scrutiny.

First, our sister courts' reasoning overlooks that "[a]lthough speech on matters of private concern is of less constitutional value than is speech on matters of public concern, such speech is not totally unprotected by the First Amendment." *Snead v. Redland Aggregates Ltd.*, 998 F.2d 1325, 1333 (5th Cir. 1993). Under the TCPA's original definitions, "exercise of" both the "right of association" and the "right of free speech" included only "communications." "Exercise of the right of free speech" included only communications involving "a matter of public concern"; in contrast, the TCPA's original "right of association" definition did not require the communication

to relate to a matter of public concern, so long as the individuals communicating with each other joined together for "common interests." In other words, the TCPA's original "right of association" definition included some speech on purely private matters, which is constitutionally protected.

Our sister courts have reasoned that construing "common" as "public" would align the original "right of association" definition with the other defined rights. But in the "right of association" definition, "common" modifies "interests," not "communications." Construing "common" interests as "public" interests would also include communications on purely private matters, so long as the individuals who communicated had joined together and did so for public interests. Such a construction would not require the "communication" to relate to a matter of public concern, or even relate to the public or community interests for which the individuals joined together. Instead, reading a "public" limitation into the TCPA's original "right of association" definition would simply render the original "right of association" definition entirely duplicative of the "right of free speech" definition, which already had covered all communications relating to matters of public concern.

Second, the TCPA's purpose is not only to protect constitutional rights, but also to "encourage" them. TEX. CIV. PRAC. & REM. CODE § 27.002. "The federal constitution sets the floor for individual rights," but the states set the ceiling. *LeCroy v. Hanlon*, 713 S.W.2d 335, 338 (Tex. 1986). To encourage the exercise of constitutional rights, the Legislature was free to statutorily define those rights more broadly than the U.S. Constitution, and to afford those broadly defined statutory rights more procedural protections in state court. *See id.* In the freedom of association context, communication between two individuals on matters of seemingly private concern is often the starting point for a larger group of individuals joining together for what becomes a matter of public concern, so that such groups can more effectively participate in governmental decisions affecting their private or business interests. Consequently, in 2011, the Legislature rationally could

have determined that suits filed against two individuals who joined together to advance mutually shared private interests, based on their communication with each other, could deter what would have become an organized effort to participate in government.[5]

Third, construing "common" as requiring the interests to be "shared by the public or at least a group," *Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 576 (Tex. App.—Fort Worth 2019, pet. denied), risks undermining constitutional protections for the expression and advancement of minority interests. In the TCPA's "right of association" definition, "common" modifies "interests." The "public" definition of "common" connotes some degree of universality, or interests that are "not limited to one person or special group." *See id.*; *see, e.g.*, U.S. CONST. art. I, § 8 ("the common Defence"). Construing "common" as requiring a degree of universality of interest invites courts to determine whether, under the TCPA, the exercise of the right to freedom of association will be protected based on whether the viewpoint is sufficiently shared or accepted by the community.

Our sister courts have also concluded that construing "common" interests as those shared by the individuals who have joined together would undermine the TCPA's goal of "protect[ing] the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002. But a broader construction of "common" would merely broaden the TCPA's applicability; it would not undermine one's ability to demonstrate a compensable injury by presenting *prima facie* evidence of a claim. Presenting *prima facie* evidence is not inherently more difficult when the defendants' interests are private, rather than public.

---

[5] Our sister courts have held that for the TCPA to apply, there must be an "element of public participation." *Gaskamp*, 596 S.W.3d at 472, 476 (citing *ExxonMobil Pipeline Co. v. Coleman*, 464 S.W.3d 841, 847 (Tex. App.—Dallas 2015), *rev'd on other grounds*, 512 S.W.3d 895, 899 (Tex. 2017) (per curiam)). However, many cases involving matters of public concern are made in purely private contexts with no element of public or citizen participation. *See, e.g.*, *Coleman*, 512 S.W.3d at 901 (reversing court of appeals, and holding the TCPA applied to private speech of a private employer in terminating the employment of a private employee); *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam) (reversing court of appeals, and holding the TCPA applied to emails from private hospital administrators about a nurse anesthetist's job performance).

Our sister courts have also construed "common" interests as "public" interests to avoid the absurdity of having the TCPA's applicability "'hing[e] on whether a single tortfeasor or multiple tortfeasors acted.'" *Bandin v. Free & Sovereign State of Veracruz de Ignacio de la Llave*, 590 S.W.3d 647, 653 (Tex. App.—Houston [14th Dist.] 2019, pet. filed) (quoting *Kawcak*, 582 S.W.3d at 584). Instead, these courts have held "the plain meaning of the word 'common' in TCPA section 27.001(2)'s definition of 'the right of association' requires more than two tortfeasors conspiring to act tortiously for their own selfish benefit." *Kawcak*, 582 S.W.3d at 588. Although our sister courts have held that drawing the line between one tortfeasor and two is arbitrary, it appears they have instead opted for drawing the line between two tortfeasors, or three or more tortfeasors. *See id.*

Our sister courts' decision to draw the line at two or more defendants is more arbitrary than drawing the line at one defendant. Statutory line-drawing is the Legislature's prerogative, not ours. Here, the Legislature drew the line at one defendant by using the phrase "individuals who join together to collectively express, promote, pursue, or defend common interests"; a single tortfeasor simply cannot meet this definition, but two tortfeasors who join together to pursue common interests can. Redrawing the line at more than two tortfeasors is more arbitrary than one because doing so has no basis in the text of the "right of association" definition, and invites courts to arbitrarily re-draw the line at two tortfeasors or more (or, as in this case, five tortfeasors).[6]

---

[6] Footnote 4 of the majority's opinion is a case-in-point. The majority notes our sister courts have declined to define how many individuals or businesses must "share" an interest before the interest is a "public" interest. Similarly, the majority declines to "place a specific numeric value on the TCPA's definition of 'common.'" But construing "common" as "public" invites, if not requires, trial courts to do just that. Consequently, construing "common" as "public" obfuscates legislative clarity with judicial confusion.

**D. Conclusion**

The majority and some of our sister courts' reasoning show the Legislature's public policy decision in 2011 not to limit the TCPA's "right of association" definition to interests relating to a matter of public concern was questionable. Recognizing this issue, the Legislature then limited the TCPA's "right of association" definition to such interests, but also decided not to make that change retroactive. Here, again, whether to make a statutory amendment retroactive is the Legislature's prerogative; not ours. Considering context, statutory purpose, and legislative history, the Legislature intended "common" to mean "shared" by the individuals who joined together, not "public" interests of the community at large.

APPLICATION

In the trial court, appellants argued San Roman's legal action related to the exercise of their right of freedom of association; specifically, to communications between appellants, who had joined together to collectively promote their shared interests. The trial court's sole basis for denying the TCPA motion was that appellants' shared interests were "business" interests, not "public" interests. Whether the TCPA applies to a legal action is a legal question we review de novo. *See Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019).

Appellants argued in their TCPA motion that San Roman's petition "shows that Lewis and Global worked together for purposes of developing Lewis's oil-and-gas leases. . . . All these communications bear on Lewis's right of association to promote its interest in developing its leases." Appellants further argued San Roman's pleadings show its legal action was related to leases entered into for "investigating, exploring, prospecting, and drilling for and producing oil, gas and all other hydrocarbons." In other words, appellants argued San Roman's petition related to an oil and gas lease. Regardless of whether "common" is properly construed as "shared" or

"public," the trial court's order must be reversed. If "common" merely means "shared," San Roman's pleadings establish appellants joined together for shared interests.

But even if "common interests" means "public interests," San Roman's pleadings establish appellants joined together for "public interests." The Supreme Court of Texas has long-recognized "Texas has a strong **public policy** not to hinder the exploration and development of oil and gas." *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 495 (Tex. 2019). "Public policy" means the "collective rules, principles, or approaches to problems **that affect the commonwealth** or (esp.) promote **the general good**, [including] principles and standards regarded . . . by the courts as being of **fundamental concern to the state and the whole of society**." BLACK'S LAW DICTIONARY 2019 (emphasis added). Consequently, when individuals join together to develop oil and gas, even if for business reasons, their interests in exploring and producing oil and gas are not only business interests, they are also "public" interests. *See ETC Tex. Pipeline, Ltd. v. Addison Expl. & Dev., LLC*, 582 S.W.3d 823, 835 (Tex. App.—Eastland 2019, pet. filed) ("Appellants' communications about acquiring the oil and gas leases . . . and the right to gather and transfer oil and gas . . . were at least tangentially related to an existing service in the marketplace, a 'matter of public concern' under the TCPA."). Thus, even if "common" interests must be construed as "public" interests, I would hold appellants satisfied their initial burden to show San Roman's pleadings related to their exercise of the right of association.

## MOTION FOR REHEARING

I would vote to grant a rehearing in this case. Solely on the grounds of briefing waiver, the majority declines to apply its construction of the TCPA—that "common interests" means "public interests"—to the facts of this case. We must liberally construe appellate briefs so that a party's rights are not unnecessarily lost by waiver. *See St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 213–14 (Tex. 2020) (per curiam); *Horton v. Stovall*, 591 S.W.3d 567, 569 (Tex. 2019)

(per curiam). Texas courts construe statutes not to answer abstract legal questions, but for the purpose of determining how the statute applies to the facts of the case. *See, e.g.*, *Panchakarla*, 2020 WL 2312204, at *3 (first construing the TCPA, and then applying the construction to the facts of the case). Notably, our sister courts have, in construing "common interests" in the TCPA, concluded: (1) what the Legislature intended by "common interests"; and then (2) applied the statutory interpretation to the facts of the case.[7] In the absence of a stipulation by the parties, I would hold our analysis requires the same.

Appellants' brief squarely challenges the trial court's ruling that the TCPA's "right of association" definition does not apply to San Roman's legal action. Appellants' primary issue on appeal—whether the TCPA's "right of association" definition applies to the business interests in this case—has been fairly raised. Our standard of review therefore requires us to conduct a *de novo* review of the TCPA motion and the response to determine whether appellants satisfied their burden to show the TCPA's "right of association" definition applies to San Roman's legal action. *See Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 603 (Tex. App.—San Antonio 2018, pet. denied) (stating we "must" consider the pleadings filed below). Consequently, our review of appellants' primary issue on appeal—whether the TCPA's "right of association" definition applies to this case—requires not only construing the TCPA, but applying our construction to the facts of this case. *See, e.g.*, *Panchakarla*, 2020 WL 2312204, at *3. Appellants' motion for rehearing cites relatively clear law establishing that—even if "common" means "public"—appellants satisfied their burden in the trial court to show the TCPA's "right of association" definition applies to San

---

[7] *See, e.g.*, *Gaskamp*, 596 S.W.3d at 474-76 (construing "common interests" then applying the construction to the facts of the case); *Dyer v. Medoc Health Services, LLC*, 573 S.W.3d 418, 427 (Tex. App.—Dallas 2019, pet. denied) (same); *ExxonMobil Pipeline Co.*, 464 S.W.3d at 848-850 (same); *see also Kawcak*, 582 S.W.3d at 576-88 (construing "common interests" and noting "Kawcak acknowledges that his invocation of the TCPA assumes a definition of 'common' at odds with our holding").

Roman's legal action. By not applying its construction of the TCPA to the facts of this case, the majority sidesteps the primary issue raised by appellants, and merely answers an abstract and purely legal question of statutory construction. *But see Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001) ("[O]ur separation of powers article, Tex. Const., art. II, § 1, prohibits courts from issuing advisory opinions that decide abstract questions of law without binding the parties.").

## CONCLUSION

I would reverse the trial court's order. The trial court did not reach the issue of whether San Roman presented prima facie evidence of its claims. I would therefore remand for the trial court to address whether San Roman presented prima facie evidence of its claims. Because the majority affirms the trial court's order, I respectfully dissent.

Luz Elena D. Chapa, Justice